IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DELMY PINEDA CRUZ, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| v. | ) | Civil Action No. SA-15-CV-326-XR |
| | ) | |
| **ROSE THOMPSON,** | ) | |
| **Warden, Karnes County** | ) | |
| **Residential Center,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

## FEDERAL DEFENDANTS' MOTION TO DISMISS COMPLAINT

On April 23, 2014, Plaintiffs filed a Class Action Complaint (ECF No. 1) alleging that Defendants had retaliated against Plaintiffs for exercising their First Amendment rights by protesting their detentions at the Karnes County Residential Center ("Karnes"), and seeking an injunction preventing the alleged retaliation. On April 29, 2015, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 5) seeking the same relief on an expedited basis. On April 29, 2015, the Court issued an Order (ECF No. 6) setting Plaintiffs' Motion for a hearing on May 7, 2015. On that date the Court denied Plaintiffs' request for preliminary relief (ECF No. 26) and the parties subsequently agreed to a briefing and discovery schedule in this case as ordered by the Court (ECF No. 34).

The Court should dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs have not pleaded any jurisdictional basis for their claim that would serve as a waiver of sovereign immunity and therefore this Court lacks jurisdiction over Plaintiffs' claims. Additionally, the Court lacks jurisdiction over the Complaint because the

named Plaintiffs have all been released from ICE custody, and their claims are therefore moot. The Complaint should also be dismissed because Plaintiffs failed to exhaust administrative remedies with regard to their claims. Finally, even if this Court has jurisdiction over Plaintiffs' claims, the Court should dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have failed to state any claim for relief under the First Amendment. As non-resident aliens who have not gained admission or entry to the United States – and who have not established any lawful presence in, or connections to, the United States – Plaintiffs are not entitled to prevail in a lawsuit seeking relief for alleged violations of the First Amendment.

## RELEVANT FACTUAL BACKGROUND

### I. Plaintiff Delmy Pineda Cruz

Plaintiff Delmy Pineda Cruz has a reinstated order of removal, and was placed in withholding-only removal proceedings because she claimed a fear of returning to her home country. Complaint ¶ 10. She alleges that at the time the Complaint was filed, she was detained along with her son in the custody of U.S. Immigration and Customs Enforcement ("ICE") at the Karnes County Family Residential Center ("Karnes"). Complaint ¶ 10. On June 11, 2015, Plaintiff Pineda Cruz posted a $5,500 immigration bond and was released from ICE custody. Declaration of Gabriel Pacheco, ¶ 6 ("Pacheco Decl."), attached hereto at Exhibit A.

### II. Plaintiff Polyane Soares de Oliveira dos Santos

Plaintiff Polyane Soares de Oliveira dos Santos has a reinstated order of removal and was placed in withholding-only removal proceedings because she claimed a fear of returning to her home country. Complaint ¶ 11. She alleges that at the time the Complaint was filed she and her child were detained in the custody of ICE at Karnes. Complaint ¶ 11. On June 12, 2015,

Plaintiff de Oliveira dos Santos posted an immigration bond of $8,000 and was released from ICE custody. Pacheco Decl. ¶ 7.

### III. Plaintiff Lilian Castillo Rosado

Plaintiff Lillian Castillo Rosado has a reinstated order of removal and was placed in withholding-only removal proceedings because she claimed a fear of returning to her home country. Complaint ¶ 12. On May 15, 2015, following a hearing, an immigration judge granted Plaintiff Castillo Rosado's application for withholding of removal and she was released from ICE custody. Pacheco Decl. ¶ 5.

### IV. Reinstatement and Withholding-Only Proceedings

Under 8 U.S.C. § 1231(a)(5), the U.S. Department of Homeland Security ("DHS") may reinstate a prior order of removal for an alien it finds "has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal."[1] 8 U.S.C. § 1231(a)(5). When DHS reinstates a removal order, the "prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." *Id.* As a general rule, once DHS has reinstated a removal order, it must remove the alien. *See id.* (providing the alien "shall be removed under the prior order"); 8 C.F.R. § 241.8(c) (providing "the alien shall be removed under the previous order of exclusion, deportation, or removal in accordance with [8 U.S.C. § 1231(a)(5)]").

There is an exception for an alien who asserts "a fear of returning to the country designated" in his reinstated removal order. 8 C.F.R. § 241.8(e). If the alien expresses fear of

---

[1] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107–296 § 471, 116 Stat. 2135 (2002), transferred most immigration functions, except the Executive Office of Immigration Review, from the Department of Justice to DHS. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

3

persecution or torture, the alien is referred to United States Citizenship and Immigration Services ("USCIS") for an interview by an asylum officer to determine whether the alien possesses a "reasonable fear" of return. 8 C.F.R. § 208.31(b). This initiates what is referred to as the reasonable fear determination process. *See* Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8479 (Feb. 19, 1999) ("[T]his screening process will also allow for the fair and expeditious resolution of such claims without unduly disrupting the streamlined removal processes applicable to these aliens"). USCIS has exclusive jurisdiction to make a reasonable fear determination. 8 C.F.R. § 208.31(a).

If the asylum officer determines that the alien has not established a reasonable fear, the alien may request review of that determination by an immigration judge. 8 C.F.R. § 208.31(f). If the immigration judge concurs with the determination that no reasonable fear of persecution or torture exists, the case is returned to DHS for execution of the reinstated order of removal, and no administrative appeal is available. 8 C.F.R. § 208.31(g)(1). If, on the other hand, the asylum officer determines that the alien has established a reasonable fear of persecution or torture, the alien is referred to the immigration judge for consideration of withholding of removal only (aliens with reinstated orders of removal are not eligible for asylum). 8 C.F.R. § 208.31(e). In withholding-only proceedings, the immigration judge is limited to consideration of this form of protection. 8 C.F.R. § 1208.2(c)(3)(i) ("The scope of review in [withholding-only] proceedings . . . shall be limited to a determination of whether the alien is eligible for withholding or deferral of removal."). Indeed, during withholding-only proceedings, "all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief." *Id.*

Withholding of removal is country-specific relief; thus, even if an alien ultimately succeeds on his withholding claim, he could potentially be removed to an alternate country. *See* 8 U.S.C. § 1231(b)(2)(E); 8 C.F.R. § 1208.16(f); *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (stating that a grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country"). Additionally, an alien who is granted protection from removal to a specific country is ineligible to apply for any form of relief under the Immigration and Naturalization Act ("INA"), including adjustment of status. 8 U.S.C. § 1231(a)(5) (providing that an alien subject to reinstatement "is not eligible and may not apply for any relief under [the INA]"). Thus, the alien remains removable.

## STANDARDS OF REVIEW

### I.   Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

Plaintiff has the burden of establishing facts sufficient to confer jurisdiction. Mere conclusory statements do not suffice. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *Gaar v. Quirk*, 86 F.3d 451, 453 (5th Cir. 1996). Under Rule 12(b)(1), Plaintiff bears the burden of persuasion if subject-matter jurisdiction is challenged because the party who sues the United States has the burden of pointing to an unequivocal wavier of sovereign immunity. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The court may dismiss for lack of subject-matter jurisdiction based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) by the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997).

## II.     Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) mandates that the Court dismiss a complaint if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  The Supreme Court has made clear that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Twombly*, 550 U.S. at 558 (quoting 5 Wright & Miller § 1216 at 233-34).

## ARGUMENT

### I.     Plaintiffs Have Not Alleged Any Valid Jurisdictional Basis for Their Claim Because They Have Failed To Plead Any Waiver of Sovereign Immunity

#### 1.     Plaintiffs Failed to Plead Any Waiver of Sovereign Immunity

Under the firmly-established doctrine of sovereign immunity, the United States may not be sued unless Congress has expressly waived the immunity defense. *See, e.g., United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *United States v. Testan*, 424 U.S. 392, 399 (1976) ("It has long been established, of course, that the United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (internal quotations omitted).  A waiver of sovereign immunity is required even in suits for injunctive relief because sovereign immunity applies to all suits brought against "States and their

6

agencies . . . regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citing *Cory v. White*, 457 U.S. 85, 90–91 (1982)). Where a plaintiff has brought suit against the federal government (or a government official sued as such), a federal court is without jurisdiction to consider the complaint in the absence of an express waiver of sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (noting that "[s]overeign immunity is jurisdictional in nature").

The federal government can waive its sovereign immunity and consent to be sued. This is typically done by statute. *See*, *e.g.*, 28 U.S.C. § 1346(b)(1) (explicitly allowing tort suits against the United States); 5 U.S.C § 702 (Administrative Procedure Act) (containing a limited waiver of sovereign immunity waiver for review of agency action). However, a "[p]laintiff bears the burden of showing Congress's unequivocal waiver of sovereign immunity." *St. Tammany Parish ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009); *see also Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). Plaintiffs' Complaint cites to no waiver of sovereign immunity, and therefore the Court lacks jurisdiction over their claim.

While Plaintiffs did not cite to the Administrative Procedure Act ("APA") as a waiver of sovereign immunity, even if they were to do so it would not save their claim. The Fifth Circuit recently held that a final agency action is required before the APA may serve as a waiver of sovereign immunity. *Belle Co., L.L.C. v. U.S. Army Corps of Engineers*, 761 F.3d 383, 387-88 (5th Cir. 2014) (quoting 5 U.S.C. § 704) ("Where, as here, no relevant agency statute provides for judicial review, the APA authorizes judicial review only of 'final agency action for which there is no other adequate remedy in a court.'"). Here, Plaintiffs are challenging the method in which the agency responded to their alleged protest activities. Plaintiffs do not state that they are challenging any "final agency action" that would give rise to jurisdiction under the APA, nor do

their claims give rise to any such challenge. Because there is no challenge to final agency action, the APA cannot provide the waiver of sovereign immunity that Plaintiffs require.

Moreover, *Belle* explicitly rejects a broader application of the APA to "claims where judicial review is sought pursuant to a separate statutory or nonstatutory cause of action." *See* 761 F.3d at 395 n.5 (discussing *Alabama-Coushatta Tribe of Texas v. U.S.*, 757 F.3d 484 (5th Cir. 2014)). Under this reading of the APA, Plaintiffs must only state a challenge to any "agency action." *See Alabama-Coushatta Tribe*, 757 F.3d at 488-90. Even if this Court applies this broader APA standard, however, Plaintiffs still cannot establish that the APA provides a waiver of sovereign immunity. To do so, Plaintiffs must show that they are challenging "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* at 489 (quoting 5 U.S.C. § 551(13)). Plaintiffs do not allege any challenge to an agency action as defined by 5 U.S.C. § 551(13); rather, they challenge individual actions taken by ICE and GEO officials in response to their protest activities. Where Plaintiffs do not allege any challenge to "agency action," they cannot benefit from the waiver of sovereign immunity found in the APA. *Alabama-Coushatta Tribe*, 757 F.3d at 489. Without a waiver of sovereign immunity, this case should be dismissed for lack of jurisdiction.

    2.    <u>28 U.S.C. § 1331 (Federal Question)</u>

Plaintiffs cannot sue Defendants under 28 U.S.C. § 1331 alone because this provision does not waive the Defendants' sovereign immunity. Though section 1331 grants subject matter jurisdiction to federal courts to hear cases arising under the constitution, laws, and treaties of the United States, it does not waive sovereign immunity. *See*, *e.g.*, *Koehler v. United States*, 153 F.3d 263, 266 n.2 (5th Cir. 1998) (noting that it is "[i]t is well settled [] that sovereign immunity is not waived by a general jurisdictional statute such as 28 U.S.C. § 1331") (citing *Voluntary*

*Purchasing Groups v. Reilly*, 889 F.2d 1380, 1385 (5th Cir. 1989)); *Smith v. Booth*, 823 F.2d 94, 97 (5th Cir. 1987). Because section 1331 alone does not waive Defendants' sovereign immunity, Plaintiffs cannot rely on it as an independent jurisdictional basis for this Complaint. *See Offiong v. Holder*, 864 F. Supp. 2d 611, 625 (S.D. Tex. 2012) (explaining that 28 U.S.C. § 1331 does not authorize a suit against the government unless it is "tied" to a statute expressly waiving sovereign immunity). Therefore, the Court should dismiss Plaintiffs' Complaint for lack of jurisdiction.

        3.      28 U.S.C. §§ 2201, 2202 (Declaratory Judgment Act)

The Declaratory Judgment Act does not independently confer federal subject-matter jurisdiction in this case. "The Declaratory Judgment Act is not an independent ground for jurisdiction; it permits the award of declaratory relief only when other bases for jurisdiction are present." *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980). Though the Declaratory Judgment Act may serve as the remedy in actions properly brought under another statutory section, it is not an independent source of federal jurisdiction. *See In re-B 727 Aircraft Serial No. 21010*, 272 F.3d 264, 270 (5th Cir. 2001).[2] Accordingly, the Court should dismiss Plaintiffs' Complaint for lack of jurisdiction.

**II.    The Complaint Should be Dismissed As Moot Because the Named Plaintiffs Have Been Released From ICE Custody**

Whether a case is moot is a jurisdictional issue. *See Bailey v. Southerland*, 821 F.2d 277, 278 (5th Cir. 1987); *United States v. Alaska S.S. Co.*, 253 U.S. 113, 116 (1920) (quoting *California v. San Pablo & Tulare R. Co.*, 149 U.S. 308, 314 (1893)) (mootness is a jurisdictional

---

[2] Further, Plaintiffs' citation to 28 U.S.C. § 1331 coupled with 28 U.S.C. § 2201 does not establish jurisdiction or create a federal cause of action. *See Mahogany v. Louisiana State Supreme Court*, 262 F. App'x 636, 637 n.2 (5th Cir. 2008) (holding that, though 28 U.S.C. §§ 1331 and 2201 provide for federal question jurisdiction and declaratory relief, they do not create an independent private right of action).

9

question because a court "is not empowered to decide moot questions or abstract propositions."). Mootness has been described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (internal citation omitted).

Federal courts are limited to hearing "cases" or "controversies." U.S. CONST. art. III, § 2. An actual case or controversy must exist at every stage in the judicial process. *See Karaha Bodas v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 365 (5th Cir. 2003). Federal courts are "without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). Thus, a claim becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *See Motient Corp. v. Dondero*, 529 F.3d 532, 537 (5th Cir. 2008).

Here, the three named Plaintiffs to this case have all been released from the Karnes County Residential Facility. Therefore, they have no continued interest in "peacefully protest[ing] their detention," or in the injunctive relief sought in their Complaint concerning the actions of ICE and GEO in response to any such protests. Because the named Plaintiffs lack any legally cognizable interest in the outcome of the case, their claims are moot and should be dismissed. Moreover, because the claims of the named Plaintiffs are moot, and no class has yet been certified, the Complaint should be dismissed in its entirety. *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1045 (5th Cir. 1981) (noting that as a general principle, a

purported class action becomes moot when the personal claims of all named plaintiffs are satisfied and no class has been certified).[3]

### III. The Complaint Should Be Dismissed Because Plaintiffs Did Not Exhaust Their Administrative Remedies

Courts may require prudential exhaustion even in cases where no statutory mandate for exhaustion exists. *See NLRB v. Industrial Union of Marine and Shipbuilding Workers*, 391 U.S. 418, 426 n. 8 (1968). Exhaustion "of administrative remedies is a general prerequisite to judicial review of any administrative action." *Hedley v. United States*, 594 F.2d 1043, 1044 (5th Cir. 1979). Generally, a court should only excuse a failure to exhaust administrative remedies in extraordinary circumstances. *See Taylor v. U.S. Treasury Department*, 127 F.3d 470, 477 (5th Cir. 1997).

---

[3] The relation-back doctrine does not apply to save the putative class claims in this case. *See Zeidman*, 651 F.2d at 1047 (stating that the relation-back doctrine "allows the district court a reasonable opportunity to rule on a pending motion for class certification despite the intervening mootness of the named plaintiffs' individual claims"). The doctrine is generally applied to "controversies so transitory that no single named plaintiff can maintain a justiciable claim long enough to reach the class certification stage of the litigation." *Id.* at 1048. It may also be applied when "the defendants have the ability by tender to each named plaintiff effectively to prevent any plaintiff in the class from procuring a decision on class certification." *Id.* at 1050. Neither of those situations exists here. Plaintiffs were released from ICE detention as a result of their own requests for release, and ongoing custody review procedures by ICE and by the immigration courts that apply to individuals in ICE custody during immigration proceedings. They were not released as part of any settlement of the claims in this lawsuit. Moreover, the fact that release is a possibility for individuals in Karnes does not render the claims in this lawsuit inherently transitory. Notably, the current Complaint does not contain any allegations of continuing First Amendment violations against any new detainees. Instead, it describes the alleged First Amendment violations against the named Plaintiffs during specific alleged protest activities, and seeks to certify a class of individuals who may wish to protest their detention, now or in the future. Complaint ¶ 7. But there is no reason that other individuals detained in Karnes who wish to raise First Amendment claims regarding any desire they may have to protest their detention cannot bring new claims and litigate those fully. Because the primary justifications for the relation-back doctrine do not apply here, and the claims of the named Plaintiffs are moot, the Complaint should be dismissed.

11

The ICE family residential standards set out the procedures for presenting grievances, both formal and informal, to ICE staff.  *See* ICE/DRO Residential Standards, Grievance System, available at: http://www.ice.gov/doclib/dro/family-residential/pdf/rs_grievance_system.pdf. Those grievance procedures include a requirement for maintenance of records of any grievances filed.  *Id.* at 6.  There is also a specific procedure for allegations of staff misconduct that includes a requirement to report such allegations to a higher-level official within the chain of command. *Id.* at 7.  Notably, no Plaintiff makes any claim that she filed any grievance with ICE regarding any of the allegations contained in the Complaint.  Filing a grievance at the time the alleged incidents took place could have provided Plaintiffs with relief from the alleged retaliation and could have provided ICE the opportunity to remedy any alleged violations.  Plaintiffs' failure to pursue these administrative remedies thus provides good reason for the Court to dismiss this Complaint.

### IV.     **Plaintiffs Have Not Stated a Claim under the First Amendment**

Plaintiffs allege that Defendants have violated their First Amendment rights.  However, as non-resident aliens who have not gained admission or entry to the United States, have not established any connections to the United States, have previously been ordered removed, and who are detained at a facility where First Amendment rights are balanced against safety and security concerns, Plaintiffs are not entitled to prevail in a cause of action challenging violations of the First Amendment.

It is well settled that certain aliens are not entitled to challenge violations of Constitutional rights and privileges that might be actionable if challenged by citizens or resident aliens of the United States.  The Supreme Court has explained that:

> [t]he alien, to whom the United States has been traditionally hospitable, has been accorded a generous and ascending scale of

> rights as he increases his identity with our society. Mere *lawful presence* in the country creates an implied assurance of safe conduct and gives him certain rights; they become more extensive and secure when he makes preliminary declaration of intention to become a citizen, and they expand to those of full citizenship upon naturalization.

*Johnson v. Eisentrager,* 339 U.S. 763, 770–71 (1950) (emphasis added). In *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), the Supreme Court further explained that the text of the Constitution suggested "that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Id*. at 265 (citing *United States ex rel. Turner v. Williams*, 194 U.S. 279, 292 (1904)).

*Verdugo–Urquidez* is but one example of a series of cases holding that recently arriving aliens lack the ability to prevail in litigation alleging violations of certain Constitutional rights where Congress has not explicitly provided those aliens with a right to sue.[4] On the other hand, lawful resident aliens who are present within the constitution's jurisdiction and have "developed sufficient connections with this country" are entitled to constitutional protections based on these connections. *Verdugo–Urquidez*, 494 U.S. at 271; *see, e.g.*, *Graham v. Richardson*, 403 U.S.

---

[4] At argument on the TRO, Plaintiffs' counsel mistakenly suggested that *Boumediene v. Bush*, 553 U.S. 723, 732–33 (2008), which addressed whether the Suspension Clause of the U.S. Constitution applied to aliens detained outside the United States at the U.S. Naval Base in Guantanamo Bay, Cuba, superseded *Verdugo Urquidez*. Tr. 165: 13. However, the Court in *Boumediene* expressly limited its holding to the facts before it. *See* 553 U.S. at 795 ("Our decision today holds only that petitioners before us are entitled to seek the writ; that the [Detainee Treatment Act] review procedures are an inadequate substitute for habeas corpus; and that petitioners in these cases need not exhaust the review procedures in the Court of Appeals before proceeding with their habeas actions in the District Court."). Thus, the Court's analysis of the extraterritorial reach of the Constitution is inapplicable to the present case.

365, 376 (1971) (resident aliens may raise equal protection challenges under the Fourteenth Amendment); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 (1953) (resident alien is a "person" within the meaning of the Fifth Amendment); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) (resident aliens entitled to certain Fifth and Sixth Amendment rights); *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886) (resident aliens protected by due process rights of Fourteenth Amendment). The scale of rights increases commensurate with the time the foreign national lawfully resides in the United States and the foreign national's immigration status.

Inadmissible recently-arriving non-resident aliens, such as Plaintiffs, who have had no time period of lawful presence in the United States and thus have developed no sufficient connections, fall outside the scope of those individuals who can file a lawsuit seeking relief under the First Amendment. *See United States ex rel. Turner v. Williams*, 194 U.S. 279, 292 (1904). As the Supreme Court stated in *Turner*:

> [i]t is, of course, true, that if an alien is not permitted to enter this country, or, having entered contrary to law, is expelled, he is in fact cut off from worshiping or speaking or publishing or petitioning in the country; but that is merely because of his exclusion therefrom. He does not become one of the people to whom these things are secured by our Constitution by an attempt to enter, forbidden by law. To appeal to the Constitution is to concede that this is a land governed by that supreme law, and as under it the power to exclude has been determined to exist, those who are excluded cannot assert the rights in general obtaining in a land to which they do not belong as citizens or otherwise.

*Id.; see also Hoffman v. Bailey*, 996 F. Supp. 2d 477, 488-89 (E.D. La. 2014) ("In considering [*Verdugo-Urquidez*], it is clear that Defendant, a nonresident alien, is not entitled to First Amendment protections of the United States Constitution."); *accord U.S. v. Portillo-Munoz*, 643 F.3d 437, 442 (5th Cir. 2011) ("[T]he phrase 'the people' in the Second Amendment of the

14

Constitution does not include aliens illegally in the United States such as Portillo, and we hold that [18 U.S.C.] § 922(g)(5) is constitutional under the Second Amendment.").

Although the Supreme Court has held that "freedom of speech and of press is accorded to aliens residing in this country," *Bridges v. Wixon*, 326 U.S. 135, 148 (1945), in his concurrence, Justice Murphy clarified the statement:

> The Bill of Rights is a futile authority for the alien seeking admission for the first time to these shores. But once an alien *lawfully enters and resides in this country* he becomes invested with the rights guaranteed by the Constitution to all people within our borders. Such rights include those protected by the First and the Fifth Amendments and by the due process clause of the Fourteenth Amendment. None of these provisions acknowledges any distinction between citizens and resident aliens. They extend their inalienable privileges to all 'persons' and guard against any encroachment on those rights by federal or state authority.

*Id*. at 161 (Murphy, J., concurring) (emphasis added). Once again, the Supreme Court conditioned an alien's ability to prevail in a lawsuit under the First Amendment on factors such as the alien's lawful admission and residence in the United States and the length of time the alien has resided within the United States.

Plaintiffs admit that they are not lawfully present in the United States, and they do not claim anywhere in their Complaint that they were lawfully admitted. CBP encountered each of the Plaintiffs shortly after they unlawfully crossed the border in the Rio Grande Valley and at the time the Complaint was filed, they had been detained at Karnes since their apprehension by ICE. Complaint ¶¶ 10-12, 19. At the time the Complaint was filed, because of their reinstated removal order, each Plaintiff was in withholding-only removal proceedings. Complaint ¶¶ 10-12. Because they are in withholding-only proceedings – and even after they are granted withholding relief – Plaintiffs remain removable, and can be removed at any moment (including the present) to a country who will accept them and where they do not fear removal. *See* 8 U.S.C.

§ 1231(b)(2)(E); 8 C.F.R. § 1208.16(f); *Lanza*, 389 F.3d at 933 (stating that a grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country").  Further, Plaintiffs have not pleaded any facts to demonstrate that in their limited time in detention in the United States, they have developed any sufficient connections with this country.  Notably, Plaintiffs do not claim that they have ever resided in this country in a lawful status.

Because Plaintiffs never gained entry into the United States and have not developed sufficient connections with this country, they are not within the scope of individuals contemplated by the Supreme Court as being able to prevail in litigation claiming violations of the First Amendment.  Because Plaintiffs cannot show that they have a cause of action under the First Amendment, they have not stated a claim under which relief may be granted and their Complaint should be dismissed.

**CONCLUSION**

Defendants respectfully request that the Court dismiss Plaintiffs' Complaint for lack of jurisdiction. Alternatively, if the Court finds that it has jurisdiction over Plaintiffs claims, the Court should dismiss the Complaint because Plaintiffs have not stated a claim upon which relief can be granted based on a violation of their First Amendment rights.

Dated: June 19, 2015                             Respectfully submitted,

                                                              BENJAMIN C. MIZER
                                                              Principal Deputy Assistant Attorney General
                                                              Civil Division
                                                              WILLIAM C. PEACHEY
                                                              Director, District Court Section
                                                              Office of Immigration Litigation
                                                             WILLIAM SILVIS
                                                              Assistant Director, District Court Section
                                                             Office of Immigration Litigation

                                                             */s/ Sarah B. Fabian*
                                                             SARAH B. FABIAN
                                                              Senior Litigation Counsel
                                                             ELIANIS PEREZ
                                                              Senior Litigation Counsel
                                                             SARAH VUONG
                                                             Trial Attorney
                                                             Office of Immigration Litigation
                                                             District Court Section
                                                             P.O. Box 868, Ben Franklin Station
                                                             Washington, D.C. 20044
                                                             Tel: (202) 532-4824
                                                             Fax: (202) 305-7000
                                                             Email: sarah.b.fabian@usdoj.gov

                                                             *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 19, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Allison N. Boyle
>Law Office of Javier N Maldonado
>8918 Tesoro Dr., Suite 575
>San Antonio, TX 78240
>210-277-1603
>Fax: 210/587-4001
>Email: allison.n.boyle@gmail.com
>
>Javier N. Maldonado
>Law Office of Javier N. Maldonado, P.C.
>8918 Tesoro, Suite 575
>San Antonio, TX 78217
>(210) 277-1603
>Fax: (210) 587-4001
>Email: jmaldonado.law@gmail.com
>
>Ranjana Natarajan
>Civil Rights Clinic, University of Texas School of Law
>727 E. Dean Keeton St.
>Austin, TX 78705
>512-232-7222
>Fax: 512-232-0800
>Email: rnatarajan@law.utexas.edu
>
>Trisha Trigilio
>University of Texas School of Law, Civil Rights Clinic
>727 E. Dean Keeton St.
>Austin, TX 78701
>512-232-2698
>Fax: 512-232-0800
>Email: ttrigilio@law.utexas.edu

                                */s/ Sarah B. Fabian*
                                SARAH B. FABIAN
                                Senior Litigation Counsel
                                Office of Immigration Litigation
                                U.S. Department of Justice

                                Attorney for Defendants